DENNIS J. HERRERA, State Bar #139669
City Attorney
DANNY CHOU, State Bar # 180240
Chief of Complex and Special Litigation
JAMES M. EMERY, State Bar #153630
Deputy City Attorney
Fox Plaza
1390 Market Street, Seventh Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-4261
Facsimile:    (415) 554-3985
E-Mail:       jim.emery@sfgov.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Nora Jean Dunaway, and Coalition on Homelessness,<br><br>           Plaintiffs,<br><br>    vs.<br><br>City and County of San Francisco,<br><br>           Defendants. | Case No. 08-1715 PJH<br><br>SAN FRANCISCO'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER<br><br>Hearing Date: April 2, 2008<br>Time:         2:30 p.m.<br>Judge:        Hon. Phyllis J. Hamilton<br>Courtroom:    3, 17th Floor<br><br>Trial Date:   Not Set |

**INTRODUCTION**

San Francisco's services for its homeless population provide a national model of compassion and effectiveness. Notwithstanding the challenges of a population with complex needs, high housing costs, and a City that is a magnet for homeless people nationwide, San Francisco ("the City") has effectively and systematically reduced the numbers of homeless over the past several years.

> In the past few years, San Francisco has applied more innovation and resources to ending homelessness than any time in its history. From 2004 to the end of January 2007, 2,907 homeless individuals were placed in permanent supportive housing with the help of several ambitious City initiatives. During this time span, another 1,864 homeless individuals left San Francisco to be reunited with friends or family members in other parts of the country through the City's Homeward Bound Program. In addition, 453 individuals on public assistance secured housing on their own. In total, since 2004 through the end of January 2007, 5,224 individuals exited homelessness through various initiatives. However, the fact that San Francisco remains a destination for homeless persons from other counties and states counterbalances the City's progress at reducing the number of homeless. In fact, one-third of surveyed homeless individuals reported that they first became homeless outside of San Francisco.

Plaintiffs' MPA, Exh. B, at 5. The unsheltered or "street" population declined by 7% between 2005 and 2007. Since 2002, the "street" homeless population declined by 38%. *Id.* at 5-6.

Plaintiffs filed their complaint yesterday, on March 31, 2008, and served a motion for a temporary restraining order, seeking an immediate order from the Court to require the San Francisco ("the City") to keep open Buster's Place, a 24-hour drop-in center for homeless adults. Buster's Place could accommodate up to 150 clients in chairs. It had no beds. The Court set a hearing for the afternoon of April 2, and directed the City to submit opposition papers on April 1.

The City closed Buster's Place on March 31, pursuant to its long-announced plan to do so. The City had spent the previous two weeks engaging in intense outreach services to the clients who visited Buster's Place, offering to arrange alternative services for them. Even with the closure, the City retains three other 24-hour drop-in centers. More importantly, the shelter system appropriately accommodates the needs of homeless individuals with disabilities, providing meaningful access to the shelter system.

The requested injunction would force the City to make compensatory cuts in medical and mental health services to the same population that used Buster's Place. The balance of hardships weighs against plaintiffs' injunction.

For the foregoing reasons, set forth more fully below, the Court should deny plaintiffs' request for a temporary restraining order.

# ARGUMENT
## I. PLAINTIFFS WILL NOT PREVAIL ON THE MERITS

Plaintiffs' theory depends on a showing that Buster's Place is the *only* 24-hour drop-in center available for homeless San Franciscans, *and* that without Buster's Place, the City has failed reasonably to accommodate the needs of its disabled homeless population. Plaintiffs must establish that plaintiff Dunaway lacks meaningful access to the City's shelter program. *See* Plaintiffs' MPA, at 11-13 (citing *Henrietta D. v. Bloomberg*, 331 F.3d 261, 277 (2d Cir. 2003).[1]

The facts do not support plaintiffs. On March 28, 2008, Mayor Newsom signed into law a San Francisco Ordinance entitled "Standards of Care for City Shelters." Emery Decl., Exh. A. Among its other provisions, City law now mandates that the City shall provide "at least one 24-hour emergency drop-in center." S. F. Admin Code, Chapt. 20, Art. XIII, § 20.403(b). In fact, at least three 24-hour drop-in centers are now available in the City: 150 Otis Street, OShum, and 2111 Jennings Street in the Bayview. An alternative 24-hour drop-in center for men opened at midnight on March 31, just one block from Buster's Place at 150 Otis Street. The facility at 150 Otis Street has both chairs and beds for its male clients. A 24-hour drop-in center for women operates at Turk and Taylor Streets in San Francisco. The City maintains a co-ed 24-drop-in center at 2111 Jennings Street in the Bayview. In addition, beds are typically available for women on a walk-in basis at the Next Door shelter, located at 1001 Polk Street.

Even if the City's homeless population lacked any 24-hour drop in center, in violation of the City's own statutory standards of care, then still the City still reasonably accommodates its disabled homeless population and provides meaningful access to its shelter system. Contrary to plaintiffs' contentions, the City has not erected "intolerable" hurdles for the disabled in its shelter reservation system. Any client who receives public assistance under the County Adult Assistance Program and is homeless will receive assistance from his or her eligibility worker to secure a shelter bed. The City has posted at each Resource Center, where shelter reservations are made, a Notice of Rights for People with Disabilities. Crum Declaration, Exh. A. As reflected in the Notice, disabled clients are

---

[1] For purposes of this motion only, the City will accept plaintiffs' statement of applicable law.

not required to wait in line for a shelter reservation, if their disability requires such an accommodation. Other requirements are waived or modified to reasonably accommodate disabilities, such as the finger imaging requirement. And Resource Center staff will provide extra help as needed to fill out forms. All shelter staff receive ADA training. Each shelter has a designated "ADA liaison," who receives extra training. The City's ADA complaint procedure is posted at Resource Centers and shelters.

The data plaintiffs themselves submitted to this Court repudiate their contention that disabled homeless lack meaningful access to the City's shelter system. According to plaintiffs, roughly 60% of the total homeless population in San Francisco are disabled. Plaintiffs' MPA, at 5:3-4. Plaintiffs then assert that "over 60% of the sheltered homeless population was severely mentally ill." *Id.,* at 5:5-6. Plaintiffs thus acknowledge that the proportion of disabled persons in the sheltered population mirrors the proportion of disabled persons in the general homeless population. This close correlation affirmatively demonstrates that disabled individuals indeed have meaningful access to the City's shelter system.

For these reasons, plaintiffs cannot show that the City has failed reasonably to accommodate its disabled homeless population, or that the disabled homeless lack meaningful access to the shelter system.

## II. THE BALANCE OF HARDSHIPS WEIGHS AGAINST THE REQUESTED INJUNCTION

In any event, the balance of hardships weighs strongly against the emergency relief plaintiffs seek. First, plaintiffs cannot justify their delay in seeking this extraordinary relief. The City announced the planned closure of Buster's Place back in January 2008. Yet plaintiffs waited until the very day of closing to file this lawsuit and seek their temporary restraining order. As a direct result of plaintiffs' delay, the City has already closed Buster's Place before the Court had an opportunity to hear the matter.

Plaintiffs simplistically frame the balance of hardships as financial costs to the City versus services plaintiffs' deem essential. The City, though, by law, must balance its budget each year. Cal. Const. Art. XVI, § 18; San Francisco Admin. Code Art. IX, § 9.101. Current budget shortfalls

require the City's' Department of Public Health to implement $46 million in cuts for the coming fiscal year, beginning July 1, 2008.  Savings due to cuts being made earlier (mid-year cuts) can be used to offset the $46 million shortfall.  DPH has already implemented numerous budget cut-backs this year, which have been the subject of several public hearings, and have been approved by the City's Health Commission.  Buster's Place did not provide any rehabilitative or restorative services to the clients who congregated there.  Closing Buster's Place was a necessary component of DPH's carefully considered response to the difficult fiscal environment.  If DPH is required to reopen Buster's Place, then DPH will have to make deeper cuts in more valuable programs that provide medical and mental health services to the same population served in the city's shelter system.

## CONCLUSION

For the foregoing reasons, the Court should deny plaintiffs' motion for a temporary restraining order.

Dated:  April 1, 2008

                                          DENNIS J. HERRERA
                                          City Attorney
                                          DANNY CHOU
                                          Chief of Complex and Special Litigation
                                          JAMES M. EMERY
                                          Deputy City Attorney

                                                       /s/ *James Emery*
By:_____
                                          JAMES M. EMERY

                                          Attorneys for Defendant
                                          CITY AND COUNTY OF SAN FRANCISCO